UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH JACKSON, III, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case no. 4:07cv0435 TCM |
| ) | |
| JAMES PURKETT, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Joseph Jackson, III, a Missouri prisoner serving four concurrent life sentences, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties' written consent. See 28 U.S.C. § 636(c).

### Background

Joseph Jackson, III ("Petitioner") was indicted in August 2002 for the first degree murder of Calvin Vinson, for the first degree robbery of Vinson for forcibly stealing his car, a 2000 Lexus, and for two counts of armed criminal action, for having committed the murder and robbery with the "use, assistance, and aid of a deadly weapon." (Resp. Ex. A at 7-8.) Before the jury trial began, the court heard evidence on, and overruled, Petitioner's motion to suppress a taped statement he gave initially attributing Vinson's shooting to a man that appeared at Vinson's house when Petitioner was also there and later admitting to having shot Vinson when he alone was with him. (Resp. Ex. B at 6-13.) Petitioner explained in that

statement that he had shot Vinson in the back of the neck as Vinson reached for something on a shelf. (Id. at 12.) Shortly before the shooting, Vinson had attempted to get Petitioner to engage in a homosexual act with him. (Id.) After the shooting, Petitioner took Vinson's car. (Id.) Evidence presented at trial by the State was summarized, in relevant part, by the Missouri Court of Appeals as follows.

> [Petitioner] went to [Vinson's] house carrying a concealed weapon. He shot [Vinson] in the back of his neck in the direction of [Vinson's] brain while [Vinson's] back was turned. . . . .
>
> [Petitioner] alerted no one of his actions, fled the scene, and did not seek aid for [Vinson]. When [Petitioner] was apprehended after spending an evening joyriding in [Vinson's] car, he initially told the police that someone else committed the murder. Once he admitted shooting [Vinson], he claimed he did so to protect himself because [Vinson] was trying to sexually force himself on [Petitioner]. However, [Petitioner's] descriptions of the incident included distorted facts . . . . For instance, [Petitioner] told both Detective Longworth and Detective Absolon that [Vinson] untied his robe and exposed himself, even though [Vinson's] robe was tied in a knot when found. [Petitioner] also stated that [Vinson] fell face up and was still in that position when he left, although police found him lying face down. According to [Petitioner], nothing was broken and there was no mess on the floor around [Vinson] after the struggle, even though [Vinson] was found in broken glass with a number of items strewn about his body. Finally, [Petitioner] misled the police with respect to the murder weapon, initially stating that the weapon belonged to someone else and that he did not know its location. . . .
>
> . . .
>
> [Petitioner] knew of [Vinson's] car because he rode in it earlier that day when he asked [Vinson] to pick him up and take him to his mother's car. He traveled to [Vinson's] residence without arranging for return transportation. [Petitioner] then carried a concealed weapon to [Vinson's] residence. He used force against [Vinson] by shooting him, which prevented [Vinson] from resisting his taking of [Vinson's] car. . . .

(Resp. Ex. E at 3-4, 7.)

Petitioner did not present any evidence. (Resp. Ex. B at 391.) Before closing arguments were made, Petitioner was questioned by the trial court about his decision not to testify. (Id. at 393-95.) The court informed Petitioner of his right to testify, his right to not testify, and his right, if he so chose, to have the jury instructed on the issue. (Id. at 393-94.) The court also informed Petitioner that the decision whether or not to testify was a "decision only [he] [could] make." (Id. at 394.) After confirming that Petitioner did not want to testify, had had a chance to adequately discuss the issue with his attorney, and was not forced or promised anything in return for not testifying, the court asked if the decision was a free and voluntary one – Petitioner replied that it was – and if he had anything he wanted to add – Petitioner replied that he did not. (Id. at 394-95.)

In addition to being instructed on first degree murder, the jury was instructed on second degree murder, voluntary manslaughter, and involuntary manslaughter. (Resp. Ex. A at 45-50.) A self-defense instruction was also given. (Id. at 59-60.) The jury returned a verdict of guilty of first degree murder, first degree robbery, and two counts of armed criminal action. (Id. at 67-70.)

Petitioner appealed on the grounds that the evidence was insufficient that he (a) coolly reflected before shooting Vinson, a necessary element of first degree murder, and (b) shot Vinson in the course of stealing his car or to overcome his resistance to the taking of his car. (Resp. Ex. C at 13, 15.) The appellate court rejected each. (Resp. Ex. E.) Evidence that Petitioner carried a concealed weapon to Vinson's house, that he shot Vinson "in the back of his neck in the direction of [Vinson's] brain while [Vinson's] back was turned," that he

told no one of the shooting and instead fled without seeking aid for Vinson, and that he told police that someone else murdered Vinson after being arrested following an evening spent joyriding in Vinson's car supported an inference that he coolly reflected when shooting Vinson. (Id. at 3.) Evidence that he knew of Vinson's Lexus, went to Vinson's house without arranging for a ride back home, carried a concealed weapon into Vinson's house, and shot Vinson, thereby preventing Vinson from resisting Petitioner taking his car, was sufficient to establish that Petitioner forcibly stole the car. (Id. at 7.)

Petitioner next sought post-conviction relief under Missouri Supreme Court Rule 29.15. (Resp. Ex. F at 4-12.) His motion was amended by appointed counsel and raised four claims of ineffective assistance of trial counsel: trial court was ineffective for (1) failing to request an instruction on stealing a motor vehicle, a lesser offense than first degree robbery; (2) advising him to not testify, (3) failing to object to repetitive testimony about the crime scene photographs[1]; and (4) failing to object to the prosecutor's remarks during closing argument referring to Petitioner as a "monster" and a "predator." (Id. at 18-45.)

An evidentiary hearing was held at which trial counsel and Petitioner testified. (Resp. Ex. G.) Asked about her advice to Petitioner not to testify, trial counsel stated that within five minutes of her informally questioning him "he realized that he was not going to be able to testify effectively due to the fact that he was unable to maintain a single version of events

---

[1]These photographs were described by the state appellate court as "depict[ing] the victim's body, covered in blood and fecal matter. The photographs showed where the victim was found and that the victim had been shot in the back of the head." **Jackson v. State**, 205 S.W.3d 282, 287 (Mo. Ct. App. 2006).

even in the short time that we had been talking that day." (Id. at 24.) She told him she "was catching him in a series of lies even in just casual conversation" and that "he probably wouldn't make a very good witness." (Id. at 24-25.) The motion court denied relief. (Resp. Ex. F at 52-62.) The court found, in relevant part, as follows.

> At the [evidentiary] hearing [Petitioner] testified that [Petitioner] and trial counsel did talk about instructing down to a stealing a motor vehicle and he thought that she was going to ask for the stealing a motor vehicle instruction. [Petitioner] claims that he was never informed that [trial counsel] was not going to instruct down.
>
> During cross-examination by the [State], [Petitioner] admitted that there was a good chance he would be convicted of stealing a motor vehicle. When told that if he was convicted of stealing a motor vehicle he would then be subjected to a felony murder conviction, [Petitioner] replied, "If you say so."
>
> During cross-examination, [trial counsel] stated she had talked to [Petitioner] about all the instruction options, and that she and [Petitioner] had discussed and agreed that it was in his best interest not to ask for a stealing motor vehicle instruction. [Trial counsel] testified that she felt it would expose him to a felony murder conviction automatically, and they would not be able to use self-defense as a defense because self defense does not apply to felony murder. Self defense was [Petitioner's] only defense in this case to murder first. [Trial counsel] stated that she had this discussion with [Petitioner], and they agreed it was their trial strategy. The Court finds [Petitioner's] testimony is not credible. . . .
>
> . . .
>
> At the evidentiary hearing [Petitioner] testified that he wanted to testify at his trial, and [trial counsel] talked him out of testifying. [Trial counsel] testified that she had discussed with [Petitioner] whether he should testify or not. [Trial counsel] stated that when she was talking to [Petitioner] as to what he would testify to at trial, it became clear that he was lying to her and could not state a truthful and complete story as to what happened on the night in question. [Trial counsel] felt that [Petitioner] would make a very poor witness. [Petitioner's] trial testimony relative to his free and voluntary decision not to

testify is credible. The Court finds [Petitioner's] motion testimony is not credible.

At the evidentiary hearing [trial counsel] stated that she knew that crime scene photos would be admitted into evidence whether or not she objected. The Court finds that [trial counsel's] decision not to object to the admittance of crime scene photographs was trial strategy. . . .

The State in closing said "Let's get something straight right off the bat, why I'm here. Calvin Vinson is the victim in this case. He's not a monster. He's not the defendant. The killer is Joe Jackson." The "not a monster" comment was directed towards the victim, not [Petitioner]. At the evidentiary hearing, [trial counsel] said she did not object because the "not a monster" comment was about the victim.

    The State in his closing argument did call [Petitioner] a "predator." In this case [Petitioner] was charged with Murder in the First Degree, Robbery in the First Degree, and two counts of Armed Criminal Action. The [State] made a reasonable inference in the State's closing argument that [Petitioner] was a predator. This inference could be made because the state had presented evidence that [Petitioner] was dropped off at the victims [sic] house so he could rob the victim of his car, [Petitioner] waited until the victim turned his back to him before shooting him in the back of his head, and [Petitioner] was caught in the victims [sic] car the next day driving around town like it was his car. It's a reasonable inference that [Petitioner's] actions were predatory.

(Id. at 55, 57-58.)

Petitioner appealed on the same four claims of ineffective assistance of trial counsel. (Resp. Ex. H.) The appellate court found each to be without merit. **Jackson v. State**, 205 S.W.3d 282 (Mo. Ct. App. 2006). The court assumed, without deciding, that the evidence would have supported a lesser-included offense instruction of stealing a motor vehicle, but found that trial counsel's decision not to give the jury the option of convicting her client of felony murder was a reasonable trial strategy. **Id.** at 286. Noting that, although the decision whether to testify belongs only to the defendant, a defendant is entitled to reasonably

competent advice on the issue of whether to testify, the court deferred to the motion court's finding that Petitioner's trial testimony on the issue was more credible than his contradictory motion hearing testimony.  **Id.** at 286-87.

Addressing Petitioner's third claim, the court noted that the "claim is not about whether counsel should have objected to the admissibility of the photographs, but whether counsel should have objected to repetitive testimony about them or their repetitive display to the jury."  **Id.** at 288.  Noting that Petitioner had not identified the point at which the display of the photographs had become so prejudicial as to be objectionable and had not asked trial counsel at the evidentiary hearing about why she had not objected, the court concluded that Petitioner had failed to carry his burden and had denied the motion court the necessary opportunity to make a factual finding on his allegation.  **Id.**  As to Petitioner's closing argument claim, the prosecutor was not referring to Petitioner when he used "monster" and was making a reasonable inference when referring to Petitioner as a "predator."  **Id.** at 289-90.  There was no showing of ineffective assistance because any objection by trial counsel to either epithet would have been without merit, and there was also no showing that it was not reasonable trial strategy not to highlight a negative characterization by objecting to it.  **Id.** at 290.

Before this Court, Petitioner presents for federal habeas relief the two grounds of insufficient evidence presented in his direct criminal appeal and the four grounds of

ineffective assistance of trial counsel presented in his postconviction appeal. Respondent contends all are without merit.

**Discussion**

Each of Petitioner's six claims were adjudicated on the merits by the state courts; hence, federal habeas relief may be granted only if those courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Additionally, the factual determinations of the state courts are presumed to be correct "absent 'clear and convincing evidence' to the contrary . . . ." **Perry v. Kemna**, 356 F.3d 880, 883 (8th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)). This presumption applies regardless of whether the factual determination is made by the state trial court or by the state appellate court. **Id.**

Insufficiency of the Evidence. Petitioner first argues that his conviction for first degree murder violates due process because the evidence was insufficient that he deliberately, or with cool reflection, shot Vinson.

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510 (1995); **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting Gaudin, 515 U.S.

at 510). Consequently, Petitioner is entitled to habeas corpus relief under § 2254 "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 324 (1979); **Nance v. Norris**, 392 F.3d 284, 289-90 (8th Cir. 2004) (quoting Jackson, 443 U.S. at 324). The scope of habeas review of such a claim is "extremely limited." **Skillicorn v. Luebbers**, 475 F.3d 965, 977 (8th Cir. 2007). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Jackson**, 443 U.S. at 319 (citation omitted); **Skillicorn**, 475 F.3d at 977 (quoting Jackson, 443 U.S. at 319). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." **Jackson**, 443 U.S. at 319. This Court "'must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and . . . must defer to that resolution.'" **Whitehead v. Dormire**, 340 F.3d 532, 536 (8th Cir. 2003) (quoting Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002)). Additionally, the federal habeas court may not make its own determination of witness credibility, for that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000); accord **Gibbs v. Kemna**, 192 F.3d 1173, 1176 (8th Cir. 1999) (rejecting challenge to sufficiency of evidence of state court conviction where habeas petitioner's arguments were directed to reliability or credibility of witnesses).

"Under Missouri law, '[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.'" **Bounds v. Delo**, 151 F.3d 1116, 1118 (8th Cir. 1998) (quoting Mo.Rev.Stat. § 565.020.1.). "'A person 'acts knowingly' . . . [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.'" **Id.** at 1118 n. 4 (quoting Mo.Rev.Stat. § 562.016.3) (alterations in original). "Deliberation is defined as 'cool reflection for any length of time no matter how brief.'" **Id.** (quoting Mo.Rev.Stat. § 565.002(3)). Also "under Missouri law a jury may infer the elements of first degree murder 'from indirect evidence and the circumstances surrounding the murder.'" **Id.** at 1119 (quoting Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994)). See also **United States v. Looking Cloud**, 419 F.3d 781, 789 (8th Cir. 2005) ("Either direct or circumstantial evidence may provide a basis for conviction; adducing direct evidence at trial is not a requirement."); **Hill v. Norris**, 96 F.3d 1085, 1088 (8th Cir. 1996) ("Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence.").

The Missouri Court of Appeals found that a reasonable jury could conclude, beyond a reasonable doubt, that carrying a concealed weapon to Vinson's house, shooting him in the back of his neck in an area likely to cause his death, leaving him there, and then spending an evening joyriding in Vinson's car was sufficient evidence of deliberation. These findings are presumed to be correct. **Evans v. Luebbers**, 371 F.3d 438, 441 (8th Cir. 2004). See also **Rousan v. Roper**, 436 F.3d 951, 958 (8th Cir. 2006) (finding that petitioner's due

process/insufficiency of the evidence claim was defeated by the Missouri Supreme Court's conclusion that a reasonable juror could have found deliberation in first degree murder case beyond a reasonable doubt); **Evans**, 371 F.3d at 442 (same holding in context of rejection by Missouri Court of Appeals of defendant's insufficiency of the evidence challenge to first degree murder conviction). And, as noted by the Eighth Circuit in a similar case finding no due process violation in a first degree murder conviction in which the defendant was alone with the victim and had made prior threats against the victim, gunshots were heard immediately after the defendant had fled from the scene, and the defendant's girlfriend had the same type of weapon used in the shooting, "[a]lthough this evidence is largely circumstantial, it is not lacking in probate force . . . ." **Bounds**, 151 F.3d at 1119. See also **Mathenia v. Delo**, 99 F.3d 1476, 1481-82 (8th Cir. 1996) (rejecting Missouri prisoner's challenge to sufficiency of evidence of deliberation when prisoner rode bicycle two blocks to victim's home).

Petitioner also challenges the sufficiency of the evidence to support his conviction for forcibly stealing Vinson's car. The jury was instructed that to find Petitioner guilty of this charge they had to find that he "used physical force on or <u>against Calvin Vinson for the purpose of preventing or overcoming resistance to the taking of the [Lexus]</u>" and that he was "armed with a deadly weapon." (Resp. Ex. A at 57.) A conviction for first degree robbery requires the forcible stealing of property. Mo. Rev. Stat. § 569.020.1. "[A] person 'forcibly steals' . . . when, in the course of stealing . . . he uses or threatens the immediate use of

physical force upon another person for the purpose of: (a) Preventing or overcoming resistance to the taking of the property . . . ." Mo. Rev. Stat. § 569.010(1). The forcible stealing of property may, under Missouri law, occur when during the course of the robbery, the defendant "[d]isplays or threatens the use of what appears to be a deadly weapon." Mo. Rev. Stat. § 569.020.1(4).

The jury heard evidence that Petitioner went to Vinson's house armed with a deadly weapon. He knew Vinson had a Lexus. He went to the house without arranging for a ride home. He used the deadly weapon against Vinson in a manner certain to prevent Vinson from resisting the taking of his car. And, Petitioner took the car. The Missouri Court of Appeals found that this evidence was sufficient for a reasonable jury to find Petitioner guilty of first degree robbery. The jury's verdict and the Missouri Court of Appeals' affirmation of that verdict do not violate Petitioner's due process rights.

<u>Ineffective Assistance of Counsel.</u>  Petitioner's next four claims allege he was denied the effective assistance of counsel.

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986)). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **Id.** (citations omitted)

(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). To establish prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 534 F.3d 857, 866 (8th Cir. 2008) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is one sufficient to undermine confidence in the outcome." **Garcia v. Bertsch**, 470 F.3d 748, 754 (8th Cir. 2006) (internal quotations omitted); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001). The burden of showing a reasonable probability is the petitioner's. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992). Moreover, habeas review of counsel's conduct is highly deferential and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)); accord **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001) (there is a strong presumption "that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy").

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001). Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails. **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007).

For the reasons set forth below, Petitioner has failed to establish any prejudice from the four alleged deficiencies in trial counsel's performance.

Petitioner first alleges that trial counsel was ineffective for not requesting that the jury be instructed on the lesser-included offense of stealing a motor vehicle in addition to the first degree robbery charge. The Missouri Court of Appeals rejected this claim on the grounds that it was a reasonable trial strategy not to give the jury the option of convicting Petitioner of felony murder when his only defense was self-defense.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." **Armstrong**, 534 F.3d at 864 (internal quotations omitted); accord **Evans**, 371 F.3d at 445; **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003). The state courts found that trial counsel's decision not to offer a lesser-

included offense instruction which would have exposed Petitioner to a conviction for second degree felony-murder while negating his theory of self-defense was reasonable trial strategy. This finding is not contrary to, or an unreasonable application of, clearly established Federal law and is not based on an unreasonable determination of the facts in light of the evidence. Accordingly, Petitioner's first claim of ineffective assistance of trial counsel is unavailing. See e.g. **Carroll**, 243 F.3d at 1103 (rejecting for lack of prejudice ineffective assistance of counsel claim based on trial counsel's failure to request that an optional paragraph be included in a jury instruction; the paragraph would have allowed the defendant to be convicted of a lesser level of intent, but was not applicable to the facts); **O'Rourke v. Endell**, 153 F.3d 560, 573 (8th Cir. 1998) (finding no prejudice from trial counsel's failure to offer lesser-included offense instruction when there was "powerful, unrefuted evidence" of petitioner's guilt on greater offense); **Kilgore v. Bowersox**, 124 F.3d 985, 995 (8th Cir. 1997) (finding no prejudice from trial counsel's failure to offer lesser-included offense instruction based on state courts' conclusions that jury never would have convicted petitioner of such offense).

Petitioner next argues that his trial counsel was ineffective for advising him not to testify.

"A criminal defendant has a constitutional right to testify on [his] behalf. Only the defendant may waive [his] right to testify, and the waiver must be made voluntarily and knowingly." **Berkovitz v. Minnesota**, 505 F.3d 827, 828 (8th Cir. 2007) (citation omitted).

An alleged failure of counsel to allow a petitioner to testify at his criminal trial is an ineffective assistance of counsel claim evaluated under Strickland, supra. **Winfield v. Roper**, 460 F.3d 1026, 1035 n.3 (8th Cir. 2006).

Again, Petitioner has failed to show any prejudice from trial counsel's advice. Under oath, he informed the trial court that the decision not to testify was his, freely and voluntarily made. The motion court found credible trial counsel's testimony that she caught Petitioner in a "series of lies" and that, during her informal questioning of him, he could not relate a single verison of events. As noted above, "[t]he deference owed to the state [motion] court pursuant to § 2254(e)(1) includes deference to its credibility determinations." **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008), cert. denied, 129 S.Ct. 1905 (2009). Thus, this Court can grant habeas relief only if those determinations are "objectively unreasonable based on the record." **Id.** This Court *may* not substitute its judgment as to a witness's credibility for the judgment of the state court which has observed the witness's demeanor. **Marshall v. Lonberger**, 459 U.S. 422, 434 (1983) (a federal habeas court has "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state . . . court"); **Perry v. Kemna**, 356 F.3d 880, 885 (8th Cir. 2004); accord **Winfield**, 460 F.3d at 1035.

To prevail on his second claim of ineffective assistance of trial counsel, Petitioner would have this Court judge the credibility of trial counsel's testimony without having observed or heard that testimony. This the Court cannot do.

Petitioner also argues that trial counsel should have, but did not, object at some undefined point to the repetitive display of crime scene photographs. It is not ineffective assistance of trial counsel not to object to properly admitted evidence. See **Kinder v. Bowersox**, 272 F.3d 532, 553-54 (8th Cir. 2001). The crime scene photographs were relevant to the issues of deliberation and self-defense. Petitioner does not elaborate on at which point in his trial, their display became prejudicial. Moreover, "[e]vidence is not unfairly prejudicial merely because it hurts a party's case." **United States v. Henderson**, 416 F.3d 686, 693 (8th Cir. 2005) (internal quotations omitted). Petitioner has failed to carry his burden of showing a reasonable probability that but for trial counsel's failure to object at some point to the display of crime scene photographs, "'the result of the proceeding would have been different.'" **Armstrong**, 534 F.3d at 866 (quoting Strickland, 466 U.S. at 694).

In his final claim, Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's characterization of him as a "monster" and "predator" during closing argument. The state courts found that the prosecutor *did not* refer to Petitioner as a monster and did not *inaccurately* refer to Petitioner as a predator.

"To establish ineffective assistance of counsel for failing to object to a prosecutor's closing argument, [Petitioner] must demonstrate, as in every ineffective assistance claim, not only that counsel's performance was deficient, but also that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different." **Bucklew v. Luebbers**, 436 F.3d 1010, 1021 (8th Cir. 2006).

The state courts' finding that the "monster" reference made by the prosecutor was *not* made when describing Petitioner, but was made when describing what Vinson was not. This finding is supported by the record. Trial counsel is not ineffective for failing to make a factually meritless argument. See **Thai v. Mapes**, 412 F.3d 970, 979 (8th Cir. 2005); accord **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002).

The state courts also found that Petitioner could, under the evidence presented at trial, accurately be described as a "predator." Trial counsel was not ineffective for not making a "fruitless" objection. See **Rousan**, 436 F.3d at 959.

## Conclusion

The six claims presented by Petitioner for § 2254 relief were presented to, and rejected by, the state courts. The state courts's decisions were not contrary to, or unreasonable applications of, clearly established Federal law, nor were they based on an unreasonable determination of the facts in light of the evidence. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Joseph Jackson, III, is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of March, 2010.